Lonnie Phillip HAZELWOOD *v.* STATE of Arkansas

CR 96-1287 945 S.W.2d 365

Supreme Court of Arkansas
Opinion delivered May 27, 1997
[Petition for rehearing denied July 14, 1997.]

*Randel Miller*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Sr. Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Lonnie Hazelwood was convicted of possession of methamphetamine with intent to deliver, possession of cocaine with intent to deliver, and sentenced to forty years and twenty years respectively — the sentences to run concurrently. His sole point for reversal is that the trial court erred in denying his motion to suppress the evidence seized during a pat-down search after he was arrested. The trial court was correct in its ruling, so we affirm.

On August 8, 1995, Officer Frank Hannah saw a red pickup truck that bore the license plate YLM134, and when he checked, the plate was registered to a different vehicle. He stopped the truck, and learned the driver was Hazelwood, who, when asked for a driver's license, admitted his license was suspended. Hazelwood's wife was with him, so Hannah let her drive the couple home, giving Hazelwood a verbal warning that if Hazelwood was stopped again, he would be subject to arrest. On the next day, Hannah again saw Hazelwood driving the pickup, and Hazelwood saw Hannah. When Hannah turned around to follow Hazelwood's truck, Hazelwood sped, doing an estimated fifty miles per hour in a thirty-mile-per-hour zone. The truck hit a curb, and Hannah and his partner, Officer Russ Manning, viewed a black object being thrown out the passenger window. During the chase, Hannah turned on his lights, and then Hazelwood's vehicle stopped. Officer Hannah instructed Hazelwood to exit his truck, told him he was under arrest and to walk to Officer Manning who was positioned behind the truck. Hannah admonished Hazelwood not to do anything foolish, indicating Hannah might merely write him a ticket and let him go. While Hannah was talking

with Hazelwood's passenger, Dickie Ray Parnell, Officer Manning patted down and searched Hazelwood, finding two plastic bags of controlled substances and $1,560.00 in Hazelwood's pockets.

■ In his appeal, Hazelwood argues the officers' stop and arrest was not based on reasonable cause, and Manning's pat-down search was unreasonable and unnecessary to protect the officers' safety. His argument is meritless. Hazelwood concedes that A.R.Cr.P. Rule 4.1(a)(iii) provides that a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed any violation of law in the officer's presence. However, he claims Officers Hannah and Manning had no factual basis for the stop here because the officers never made a radio call before the stop in order to confirm Hazelwood's driver's license was still suspended. Hazelwood's argument ignores Hannah's earlier knowledge of Hazelwood's suspended license and his continuing display of a fictitious plate on his truck. *See* Ark. Code Ann. §§ 27-14-306 and 27-16-303(a)(1) (Repl. 1993). Plus, Hannah and Manning witnessed Hazelwood speeding, his vehicle hitting a curb when taking a corner, and someone throwing a black object out the passenger window during the chase. The officers indisputably observed Hazelwood violate several laws while in their presence.

Hazelwood's other argument is that, even if the stop and arrest were lawful, Manning's search of him was not justified. He cites A.R.Cr.P. Rule 12.1 which provides as follows:

> An officer who is making a lawful arrest may, without a search warrant, conduct a search of the person or property of the accused for the following purposes only:
>
> (a) to protect the officer, the accused, or others;
>
> (b) to prevent the escape of the accused;
>
> (c) to furnish appropriate custodial care if the accused is jailed; or
>
> (d) to obtain evidence of the commission of the offense for which the accused has been arrested or to seize

> contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense.

Hazelwood submits that none of the four purposes listed in Rule 12.1 existed at the time of his stop, and since he was stopped only for a routine traffic offense, there was no basis for a search of his person beyond a safety pat-down. Hazelwood concludes that Manning's search of Hazelwood's pockets violated his Fourth Amendment rights and this state's rules of criminal procedure. He is wrong.

First, Hazelwood fails to mention A.R.Cr.P. Rule 12.2, which establishes the permitted scope of a search by an officer making a lawful warrantless arrest. That rule provides as follows:

> An officer making an arrest and the authorized officials at the police station or other place of detention to which the accused is brought *may conduct a search of the accused's garments and personal effects ready to hand, the surface of his body, and the area within his immediate control.* (Emphasis added.)

Arkansas criminal rules 12.1 and 12.2 reflect the Supreme Court decisions in *Chimel v. California*, 395 U.S. 752 (1964) and *United States v. Robinson*, 414 U.S. 218 (1973). In *Chimel*, the Court declared that when an arrest is made "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape" and also "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." In *Robinson*, the officer arrested Robinson for driving while his license was revoked, and after arresting him, searched his coat pocket and found heroin in a cigarette package. The District of Columbia Court of Appeals held the search to be unreasonable because there was no evidence to search for, given the nature of the offense, and because the officer's interest in self protection could have been met by only a frisk of the arrestee. The Supreme Court, however, noted its "fundamental disagreement" with the court of appeals' suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority

for a search of the person incident to a lawful arrest, and concluded:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. *A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.* (Emphasis added.)

*Robinson,* 414 U.S. at 235.

Here, the officers effected Hazelwood's lawful arrest, and in doing so, Officer Manning's contemporaneous search of Hazelwood was permitted and not violative of the Fourth Amendment or Arkansas's criminal rules. Having found in the course of a lawful search of Hazelwood the two plastic bags of controlled substances, Officer Manning was entitled to seize them as fruits, instrumentalities, or contraband of criminal conduct. *Id.,* 414 U.S. at 236; *see also Stout v. State,* 304 Ark. 610, 804 S.W.2d 686 (1991).